IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.   12-cv-01768-WYD-MJW

DONALD T. PIPPIN, SR.,

    Plaintiff,

v.

ELBERT COUNTY, COLORADO;
DEL SCHWAB;
KURT C. SCHLEGEL; and
JOHN SHIPPER, Elbert County Commissioners in their official and individual capacities,

    Defendants.

## ORDER

THIS MATTER is before the Court on the Defendants' Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 (ECF No. 35).  After carefully considering the pleadings and admissible evidence, I find that the motion for summary judgment should be granted and the case dismissed in its entirety.

I.    <u>BACKGROUND AND RELEVANT FACTS</u>

During the relevant time period, the elected Commissioners of the Board of Elbert County Commissioners were Kurt Schlegel, Del Schwab and John Shipper.  Also, during all relevant times, Cherie Radeker was the Custodian of Records for Elbert County, Colorado.

Between January and May 2012, Plaintiff submitted approximately 10-12 requests for records to Elbert County, Colorado pursuant to the Colorado Open Records Act.  Many of these requests were for various financial information including credit card

statements for Elbert County employees. Plaintiff also sent multiple written communications to Elbert County employees following up on his records requests. Elbert County employees responded to Plaintiff's records requests, and in many instances, the requested information was provided.

Plaintiff's written communications often contained statements indicating that he was upset with Elbert County's response to his requests. On January 19, 2012, Plaintiff sent an email stating "I am very upset at the way my records request was handled. I basically paid $10.25 for crap …" (ECF No. 35, Ex. A-5). On March 6, 2012, Plaintiff wrote a letter to Radeker that reads as follows:

> Your letter dated March 1, 2012, denial of my open records request was a stretch at any length to keep me from getting the Pay records for the 3 months . . . Is this retaliation for the Affidavit I submitted to the DA, or perhaps a feeble attempt to keep records away from me for damage control? . . . You know the more you fight giving me the data I request, the more it looks like you're hiding misconduct. I will continue to ask for records, the more you turn them down, the worse it looks for your office.

(ECF No. 35, Ex. A-5). On March 6, 2012, Plaintiff also sent Radeker an email in which he said "Your letter dated March 1, 2012, denial of open record request just amazes me . . . ." (ECF No. 35, Ex. A-5). On March 7, 2012, Plaintiff again wrote to Radeker asking "[a]re you planning on honoring the rest of the request?" (ECF No. 35, Ex. A-5).

While Plaintiff told Radeker that he knew he could initiate a court action if he believed Elbert County had not complied with its obligations under the Open Records Act, Plaintiff never initiated such a proceeding. (ECF No. 35, Ex. A-4). However, on February 29, 2012, Plaintiff submitted an affidavit to the 18th Judicial District Attorney's Office describing what he perceived as financial irregularities within Elbert County. The

district attorney's office referred Plaintiff's affidavit to the Colorado Bureau of Investigation ("CBI").

In addition to his written communications, Plaintiff visited the Elbert County administration building on several occasions to follow up on his requests or to retrieve requested documents. On three occasions, Plaintiff raised his voice at various Elbert County employees including Radeker. Additionally, Radeker testified that on March 26, 2012, Plaintiff left her a voice mail message calling her a "scapegoat" and telling her that he "deserves the truth and you have to give it to me" and giving her "a chance to come clean." (ECF No. 35, Ex. A-15).

On April 4, 2012, Plaintiff visited the Elbert County administration building. Without providing an explanation for his actions or receiving permission, Plaintiff took photographs of the security cameras that Elbert County had recently installed. Radeker testified that Plaintiff's conduct in taking the photographs concerned her. Radeker also testified that she (along with other Elbert County employees at the administration building) generally found Plaintiff's behavior to be worrisome and irregular, and that she spoke to a deputy sheriff and the Commissioners about her concerns.

Upon hearing from Radeker and other Elbert County employees about Plaintiff's behavior, especially the taking of photographs of the security cameras in the administration building, Schlegel became concerned about the safety of the Elbert County employees. Schlegel testified that

> Because there had been a sequence of events that took place over several weeks. And what I was told by staff is they were feeling more and more uncomfortable with Mr. Pippin. When he would come up, he would raise his voice. I believe there was at least one occasion when he threw

> some papers down on Cherie Radeker's desk and said, "This isn't what I asked for. Why can't you comply with my requests?" And it just – his agitation level was increasing each and every time. And that culminated with when I was called and said Mr. Pippin was seen taking pictures of our security devices in the building."

(ECF No. 35, Ex. A-3 at 66:1-12).

On April 4, 2012, Schlegel sent an email to Sheriff Heap, Under-Sheriff Winkle, Commissioner Schwab, Commissioner Shipper, Radeker, Elbert County Attorney Alex Beltz, and the Director of Elbert County Emergency Management Cory Stark, outlining Plaintiff's behavior and expressing his concern that Plaintiff was a safety threat. Sheriff Heap recommended that Schlegel ask the court for a civil protection order.

On April 5, 2012, Cory Stark reported Plaintiff's conduct to the Colorado Information Analysis Center ("CIAC").

On April 12, 2012, Schlegel filed a verified motion for a civil order of protection with the Elbert County courts on behalf of himself and other Elbert County employees. In the motion, Schlegel explained his concerns regarding Plaintiff's conduct. (ECF No. 35, Ex. A-8). While Commissioners Schwab and Shipper did not oppose the filing of the motion, they did not appear at the hearing before the court on the motion nor publish any statements about Plaintiff. On April 19, 2012, Schlegel and Radeker attended a hearing before the court on the temporary order of protection and testified under oath about their concerns with Plaintiff's behavior. (ECF No. 50, Ex. A-20). That same day, the court issued a temporary order of protection ordering that Plaintiff shall have no contact with any Elbert County employee except through email or telephone communications. Plaintiff was also ordered to keep a distance of 20 yards from the Elbert County administration building. (ECF No. 35, Ex. A-11). On April 23, 2012,

Plaintiff made another records request regarding the source of the funding for the Elbert County administration building's security cameras. On April 27, 2012, the Elbert County court held a second hearing and dismissed the temporary protection order. (ECF No. 35, Ex. A-14).

On May 15, 2012, Radeker sent an email to Sheriff Heap and others informing them of the CBI's decision not to pursue an investigation of Elbert County based on Plaintiff's affidavit to the district attorney's office. Radeker concluded the email with the phrase, "GAME ON!!!!". (ECF No. 40, Ex. K).

Based on these incidents, on September 9, 2012, Plaintiff filed this civil action against the Defendants seeking damages under 42 U.S.C. § 1983 for a violation of the First Amendment to the United States Constitution by retaliating against him for his allegations of illegal government activity by pursuing a permanent civil protection order and engaging in a campaign to portray him as a threatening individual. Plaintiff also brings state law claims of malicious prosecution, defamation, civil conspiracy and intentional infliction of emotional distress.

## II.   STANDARD OF REVIEW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the Court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the . . . moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Equal Emp't Opportunity Comm. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). "When applying this standard, [the Court must] view the

evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (quotation marks and citation omitted). All doubts must be resolved in favor of the existence of triable issues of fact. *Boren v. Southwestern Bell Tel. Co.*, 933 F.2d 891, 892 (10th Cir. 1991).

Here, the individual Defendants have raised the defense of qualified immunity. "In civil rights actions seeking damages from governmental officials, those officials may raise the affirmative defense of qualified immunity, which protects all but the plainly incompetent or those who knowingly violate the law." *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001) (internal quotations and citation omitted). Once the affirmative defense is raised by a defendant, the burden shifts to the plaintiff to come forward with facts or allegations sufficient to show both "that the defendant's actions violated a constitutional or statutory right" and that the right "was clearly established at the time of the defendant's unlawful conduct." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (internal quotations and citation omitted); *see also Workman v. Jordan*, 32 F.3d 475, 479 (10th Cir. 1994); *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996).

Thus, in the context of a motion for summary judgment, I must first consider whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the [officials'] conduct violated a constitutional right?" *Holland*, 268 F.3d at 1185. If I determine that there has been a violation of a constitutional right, then I must "ask whether the right was clearly established at the time of the defendant[s'] unlawful conduct." *Id.* at 1186 (internal quotations and citation omitted). If the plaintiff

successfully establishes the violation of a clearly established right, the burden then shifts to the defendant, who must prove that there are no genuine issues of material fact and that the defendant is entitled to judgment as a matter of law. *Medina*, 252 F.3d at 1128; *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002).

Recently, the United States Supreme Court altered somewhat the analytical process that may be used when a defendant claims the protection of qualified immunity. *Pearson v. Callahan,* 555 U.S. 223 (2009). Pursuant to *Saucier v. Katz,* 533 U.S. 194 (2001), a court addressing a claim of qualified immunity first must determine whether the plaintiff has adduced facts sufficient to make out a constitutional or statutory violation. *Id.* at 201. Under *Saucier,* a court must address and resolve this first question before proceeding to the second step of the analysis, a determination of whether the claimed constitutional or statutory right was established clearly at the time of the alleged violation. *Id.* In *Pearson,* the Supreme Court held that the sequential two step analysis mandated in *Saucier*

> should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.

*Pearson,* 555 U.S. at 236 (2009). The Supreme Court noted, however, that the sequence set forth in *Saucier* often is the appropriate analytical sequence. *Id.*

III.   ANALYSIS

    A.   Plaintiff's First Amendment Retaliation Claim

The elements of a claim for retaliation in violation of the First Amendment are:

(1) the plaintiff was engaged in a constitutionally protected activity, (2) the governmental actions caused him such injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the governmental actions were substantially motivated as a response to his constitutionally protected conduct.  *Worrell v. Henry,* 219 F.3d 1197, 1212 (10th Cir. 2000).  "Any form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom."  *Id.*  The standard for evaluating that chilling effect on speech is objective, not subjective. *Shero v. City of Grove,* 510 F.3d 1196, 1203 (10th Cir. 2007) (quoting *Eaton v. Meneley,* 379 F.3d 949, 954–55 (10th Cir. 2004).   In other words, the proper inquiry is "whether a person of ordinary firmness would be chilled, rather than whether the particular plaintiff is chilled."  *Smith v. Plati,* 258 F.3d 1167, 1177 (10th Cir. 2001).

            1.      <u>Whether Defendants' Conduct Violated the First Amendment</u>

Turning to the qualified immunity analysis, I first determine whether the facts alleged show the Defendants' conduct violated a constitutional right.  *Holland*, 268 F.3d at 1185.

Considering the elements of a First Amendment retaliation claim, it is undisputed that Plaintiff was engaged in a constitutionally protected activity in seeking financial records from Elbert County.  Defendants argue, however, that Plaintiff suffered no adversity as a result of Defendants' conduct.  Here, while Plaintiff does not claim that the decision to file the motion for the temporary restraining order constituted retaliation, he does contend that the decision to go forward and seek a permanent protection order constituted retaliation.  Plaintiff also claims that Schlegel's April 4, 2012 email,

Radeker's May 15, 2012 email and Stark's report to the CIAC are also evidence of retaliation. Plaintiff contends that because of Plaintiff's fear of additional reprisals, Plaintiff refused to cooperate with the CBI's investigation into the allegations contained in his affidavit to the district attorney's office. Viewing the facts in the light most favorable to Plaintiff, I find that genuine issues of fact exist as to whether Plaintiff's protected activities were chilled due to Defendants' conduct.

I also find genuine issues of fact with respect to Defendants' motivation in seeking the permanent protection order. In his response to the motion for summary judgment, Plaintiff argues that between April 19, 2012 and April 27, 2012, he submitted an open records request for information about the Elbert County administration building's security cameras. Thus, prior to the hearing on the permanent civil protection order, Schlegel had no basis to seek the permanent order because he "knew, or should have known" that Plaintiff only took the security camera photographs in order to "describe" them in his records request. (ECF No. 47 at 14-16). Plaintiff also claims that Schlegel knowingly mischaracterized the content of Plaintiff's March 26, 2012 voice mail message to Radeker before the court. Plaintiff further cites Schlegel's April 4, 2012 email as a fabrication of Plaintiff's conduct. Again, considering the record as a whole taken in the light most favorable to Plaintiff, I find that there is sufficient evidence to conclude that Defendants were angry or frustrated with Plaintiff's efforts to unearth financial irregularities within Elbert County. However, I also find sufficient conflicting evidence to support the Defendants' theory that they honestly perceived Plaintiff as a threat to their safety.

## 2. <u>Whether Defendants Violated Clearly Established Law</u>

Turning to the second prong of the qualified immunity analysis, I must determine whether Plaintiff's First Amendment right was sufficiently clear that a reasonable government employee in the Defendant's shoes would understand that what he or she did violated that right. *See Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1327 (10th Cir. 2007). "A clearly established right is generally defined as a right so thoroughly and consistently recognized under the law of the jurisdiction as to be 'indisputable' and 'unquestioned.'" *Lobozzo v. Colorado Dept. of* Corrections, 429 F. App'x 707, 710 (10th Cir. 2011). Generally, this means that "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must be as plaintiff maintains." *Farmer v. Perrill*, 288 F.3d 1254, 1259 (10th Cir. 2002).

Plaintiff directs me to one unpublished decision, *Lackey v. Bernanillo*, No. 97-2265, 1999 WL 2461 (10th Cir. Jan 5, 1999), in an attempt to show a violation of clearly established law. In *Lackey*, the Tenth Circuit affirmed the district court's order granting summary judgment on a First Amendment retaliation claim. *Lackey* involved a plaintiff who, upon learning that his neighbor, Peter Acquiar, was a convicted child molester, began threatening and aiming guns at Acquiar. Following a fight between plaintiff and Acquiar, Thomas, a sheriff's deputy, contacted the Albuquerque police department and asked them to contact the plaintiff and warn him to "tone [it] down." *Id.* at *2. As a result, the plaintiff filed a First Amendment retaliation action. The *Lackey* court found that Thomas "clearly set forth an objectively reasonable explanation for his decision to

-10-

contact Albuquerque police to request an investigation into [plaintiff's] conduct." *Id.* at *4.

Plaintiff's contentions are without merit. Although *Lackey* and the instant case both involve First Amendment retaliation claims, the similarities end there. *Lackey* does not notify an official of any unconstitutional retaliatory activity. I find that there is no clearly established legal precedent warning Defendants that by seeking a permanent civil protection order (following a court ordered temporary protection order), sending internal emails, or filing a report with the CIAC, a law enforcement agency, that they were violating the First Amendment. *See Pace v. Woodmen Hills Metropolitan District*, No. 10-cv-01081-RPM, 2012 WL 5512175 (D.Colo. 2012, Nov. 14, 2012) (finding no clearly established law that filing a civil protection order violates the First Amendment). Accordingly, I conclude that Defendants are entitled to qualified immunity on Plaintiff's First Amendment retaliation claim.

B. Plaintiff's Unconstitutional Policy Claim

To establish municipal liability under § 1983, a plaintiff must prove (1) the existence of a municipal policy or custom and (2) that there is a direct causal link between the policy or custom and the injury alleged. *Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010).

> A municipal policy or custom may take the form of (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that

> failure results from deliberate indifference to the injuries that may be caused.

*Id.* (internal quotations and citations omitted).

"A municipality may not be held liable where there was no underlying constitutional violation by any of its officers." *Hinton v. City of Elwood, Kan.*, 997 P.2d 774, 782 (10th Cir. 1993) (holding that because the individual defendants' conduct failed to violated plaintiff's Fourth Amendment rights, the imposition of liability on the city is precluded). Here, Plaintiff's First Amendment retaliation claim against Elbert County seeks to hold the county liable solely because of the actions of its individual Commissioners. However, having found that the individual Defendant Commissioner's conduct did not violate Plaintiff's First Amendment rights, Elbert County cannot be held liable. Accordingly, I grant summary judgment in favor of Elbert County.

    C.    <u>Plaintiff's State Law Claims</u>

Plaintiff asserts state law tort claims for malicious prosecution, defamation, civil conspiracy, and outrageous conduct against the Defendants.

As to Defendant Elbert County, the Colorado Governmental Immunity Act ("CGIA") governs circumstances under which a person may maintain a tort action against the State of Colorado, its political subdivisions, instrumentalities, and employees. *See Mesa Cnty. Valley Sch. Dist. No. 51 v. Kelsey*, 8 P.3d 1200, 1203 (Colo. 2000). The CGIA provides that public entities are immune from all claims that lie or could lie in tort, unless the claim falls within one of the eight limited areas for which immunity has been waived. *See* Colo. Rev. Stat. §§ 24-10-105 and106. Here, Plaintiff's asserted tort claims do not fall within one of the limited areas, thus, Elbert County's immunity is not waived.

The CGIA also provides similar immunity to public employees.  However, public employees are not immune from tort claims if their acts or omissions causing the injury were willful and wanton.  Colo. Rev. Stat. § 24-10-118.  The CGIA defines "public employee" to include officers and employees of public entities.  Thus, I find that the Defendant Commissioners are public employees within the meaning of the CGIA.  *See* Colo. Rev. Stat. § 24-10-103(4)(a).

Although the CGIA does not define the term "willful and wanton," the Colorado Supreme Court looked to the definition of "willful and wanton" for purposes of exemplary damages ("conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff") and the definition of "willful and wanton" used in the automobile guest statute ("wholly disregardful of the rights, feelings and safety of others . . . at times even imply[ing] an element of evil").  *Moody v. Ungerer*, 885 P.2d 200, 205 (Colo. 1994) (internal quotations and citations omitted).

Here, the Defendants argue that there is simply no evidence to support a finding that they engaged in willful and wanton conduct.  In response, Plaintiff contends that Schlegel's April 4, 2012 email and the statements he made in his motion for the civil protection order which "liken[] Mr. Pippen to a terrorist and a mass murderer" are examples of willful and wanton conduct.  (ECF No. 47 at 18).  Plaintiff also argues that because Commissioners Schwab and Shipper "failed to take any steps to deter … Schlegel", they are equally culpable.  (ECF No. 47 at 18).  With respect to Schlegel's email and his statements made in support of his motion for a civil protection order, I conclude that the evidence before the Court is insufficient to support a finding of willful

and wanton conduct. It is undisputed that Plaintiff engaged in the conduct that caused Schlegel's concern. Among other things, Plaintiff admittedly raised his voice to Elbert County employees, left abrasive emails and a voice message for Radeker, and photographed administration building security cameras without permission or explanation. Having been informed about these "worrisome" events from various Elbert County employees, Schlegel was simply expressing his concerns to his fellow Commissioners, the sheriff, the county attorney, Radeker and Stark. It is reasonable to believe that Schlegel found Plaintiff's conduct, particularly the photographing of the security cameras, to be potentially threatening. This series of events, even taken in the light most favorable to the Plaintiff, simply does not rise to the level of purposeful conduct done "heedlessly and recklessly, without regard to consequences[.]" *See Moody*, 885 P.2d at 205. Viewing Plaintiff's conduct as a whole, I find that Schlegel had ample reason to be concerned for the safety of Elbert County employees. Accordingly, I find that neither Schlegel's April 4, 2012 email nor the statements made in support of the motion for the civil protection order can be the basis to overcome governmental immunity under the CGIA.[1] For this reason, summary judgment in favor of the Defendants based on governmental immunity is appropriate on Plaintiffs' state law claims.

---

[1] Similarly, there is no evidence to suggest that Commissioners Schwab or Shipper acted wilfully or wantonly in connection with Schlegel's email or statements made in support of the motion for civil protection order.

IV.     CONCLUSION

Based on the foregoing, it is

ORDERED that Defendants' Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56 (ECF No. 35) is **GRANTED.**  It is

FURTHER ORDERED that this case is **DISMISSED**, and judgment shall enter in favor of the Defendants and against the Plaintiff.  It is

FURTHER ORDERED that the Defendants are awarded their costs, to be taxed by the clerk of the court under Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated:  February 7, 2014

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Senior United States District Judge